751 A.2d 1077 (2000)
331 N.J. Super. 322
HOSPITAL CENTER AT ORANGE, St. Francis Medical Center, St. Mary Hospital (Passaic), Deborah Heart and Lung Center, Cathedral Health Care System, Inc., St. Francis Hospital (Jersey City), Mountainside Hospital, Palisades General Hospital, Rancocas Hospital, St. Mary Hospital (Hoboken), and Hackettstown Community Hospital, Plaintiffs-Appellants,
v.
Michele K. GUHL, Commissioner of the Department of Human Services, and Margaret Murray, Director of the Division of Medical Assistance and Health Services, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 2000.
Decided June 2, 2000.
*1079 Calvin A. Jones, for plaintiffs-appellants (Reed, Smith, Shaw & McClay, attorneys; Murray J. Klein, Princeton, of counsel; Mr. Jones and Steven M. Ziolkowski, Newark, on the brief).
Rhonda S. Berliner-Gold, Deputy Attorney General, for defendants-respondents (John J. Farmer, Jr., Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Ms. Berliner-Gold and Barbara Pryor Waugh, Deputy Attorney General, on the brief).
Before Judges SKILLMAN, D'ANNUNZIO and NEWMAN.
*1078 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
This case deals with the obligation of the Division of Medical Assistance and Health Services (Division) to provide prompt review of hospitals' appeals from administrative determinations of Medicaid reimbursement rates.
On February 17, 1999, appellants, which are twelve non-profit acute care hospitals that participate in the Medicaid program, initiated this action in lieu of prerogative writs in the Law Division. The named defendants were Margaret Murray, the Director of the Division, and Michele K. Guhl, the Commissioner of the Department of Human Services. Appellants alleged that they had filed administrative appeals with the Division challenging the Medicaid reimbursement rates established in January 1996, October 1996, January 1997 and January 1998, but that the Division had "continually and consistently failed to make any determination or issue any decision with respect to any of the... rate appeals." Appellants sought an order directing the Division to decide all their pending rate appeals within thirty days. Appellants also sought an order directing the Division to decide any future rate appeals within 120 days. In addition, appellants sought an order requiring "defendants to pay ... all costs and fees, including attorneys fees, incurred in prosecuting this action."
Appellants' claims were based on principles of state administrative law as well as Title XIX of the Federal Social Security Act, commonly known as the Medicaid Act, 42 U.S.C.A. §§ 1396-1396v, and the regulations adopted thereunder. In addition, appellants contended that the Division's failure to promptly decide their Medicaid rate appeals violates the Due Process Clause of the Fourteenth Amendment. Appellants asserted that their federal claims were maintainable under 42 U.S.C.A. § 1983.
Respondents filed a motion to dismiss appellant's complaint or, in the alternative, to transfer the case to this court. On May 13, 1999, the Law Division transferred the case, concluding that this court has exclusive jurisdiction because appellants seek review of the inaction of a state administrative agency.
On June 29, 1999, appellants filed a motion for the summary entry of an order compelling the Division to immediately decide their pending Medicaid rate appeals.
On July 9, 1999, while appellants' motion was pending, the Division issued final decisions in all of appellants' pending Medicaid rate appeals except for four filed by Deborah Heart and Lung Center.[1] Twentynine *1080 of these decisions consisted of identical form letters that denied the hospitals' Medicaid rate appeals on the ground that the "hospital did not sustain a marginal loss in providing inpatient services to Medicaid beneficiaries at the rates under appeal." The other two were form letters that dismissed the hospitals' rate appeals on the ground that they had been filed beyond the twenty-day period allowed under N.J.A.C. 10:52-9.1(b)(1).
Following these decisions, respondents filed a motion to dismiss this appeal on the ground that appellants' claim that the Division had failed to decide their rate appeals within a reasonable period of time was moot because the Division had issued decisions. Appellants opposed the motion on the ground that their claims were not limited to a demand for issuance of decisions in the pending rate appeals. We denied respondents' motion.
Appellants now ask this court to grant declaratory and injunctive relief that would require the Division to decide future Medicaid rate appeals in a timely manner. Specifically, appellants seek an order that would require the Division "to issue written determinations of hospitals' rate appeals within 120 days." Appellants also seek a determination that the decisions issued by the Division on July 9, 1999 were "incomplete" and an order directing the Division to issue "complete" decisions in their rate appeals. In addition, appellants seek an award of attorney's fees under 42 U.S.C.A. § 1988.
We conclude that the Division has an obligation to decide Medicaid rate appeals within a reasonable period of time, and that the Division failed to satisfy that obligation in processing the appeals that precipitated this action. However, neither federal nor state law obligates the Division to decide Medicaid rate appeals within 120 days or any other fixed time period, and we do not believe it would be appropriate for this court to impose such an obligation. Therefore, we deny appellants' request for injunctive relief compelling the Division to decide future Medicaid rate appeals within a specified time period. We also reject appellants' demand for a declaration that the decisions in the rate appeals issued on July 9, 1999, are "incomplete." We reject appellants' claim for attorney's fees under 42 U.S.C.A. § 1988.

I
Preliminarily, we note that the Law Division properly transferred the case to this court.
Rules 2:2-3(a)(2) and 2:2-4 "contemplate [] that `every proceeding to review the action or inaction of a state administrative agency [shall] be by appeal to the Appellate Division.'" Pascucci v. Vagott, 71 N.J. 40, 52, 362 A.2d 566 (1976) (quoting Central R.R. v. Neeld, 26 N.J. 172, 185, 139 A.2d 110, cert. denied, 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958)). "The term `action,' found in [Rules 2:2-3(a) and 2:2-4], includes inaction." Mathews v. Finley, 46 N.J.Super. 175, 177, 134 A.2d 441 (App.Div.), certif. denied, 25 N.J. 283, 135 A.2d 590 (1957). Therefore, the Appellate Division has exclusive jurisdiction to consider a claim of state administrative agency inaction. Pascucci v. Vagott, supra, 71 N.J. at 52, 362 A.2d 566; Johnson v. New Jersey State Parole Bd., 131 N.J.Super. 513, 517-21, 330 A.2d 616 (App.Div.1974), certif. denied, 67 N.J. 94, 335 A.2d 47 (1975); see also Toll Bros., Inc. v. State of New Jersey, Dept. of Envtl. Protection, 242 N.J.Super. 519, 525-26 n. 3, 577 A.2d 845 (App.Div. 1990); Equitable Life Mortgage & Realty Investors v. New Jersey Div. of Taxation, 151 N.J.Super. 232, 237-38, 376 A.2d 966 (App.Div.), certif. denied, 75 N.J. 535, 384 A.2d 514 (1977); but cf. Township of Montclair v. Hughey, 222 N.J.Super. 441, *1081 446-48, 537 A.2d 692 (App.Div.1987).[2] If our determination of such a claim requires the development of a factual record, "we can remand to the agency for a statement of reasons, for further action by the agency, or can permit the Law Division to create a record and make fact-finding." Trantino v. New Jersey State Parole Bd., 296 N.J.Super. 437, 460, 687 A.2d 274 (App.Div.1997), modified on other grounds, 154 N.J. 19, 711 A.2d 260 (1998).
Accordingly, under our appellate rules, the appropriate procedural route for a party claiming to be adversely affected by the inaction of a state administrative agency is to file a notice of appeal and motion for summary disposition accompanied by a supporting brief, certification and other relevant factual materials. The agency's response to such a motion affords this court an opportunity to determine whether there is any dispute concerning the factual allegations upon which an inaction claim is grounded. If there is no dispute, this court can proceed to a prompt disposition of the claim. If there is a dispute, the matter can be remanded to the agency, an Administrative Law Judge or the Law Division to develop a record and make appropriate factual findings.
In this case, appellants' motion for the summary entry of an order compelling the Division to immediately decide their pending Medicaid rate appeals was mooted when the Division decided those appeals while the motion was still pending. Insofar as the certifications submitted in connection with that motion relate to appellants' other claims, the parties consented to supplementation of the record to include their respective certifications. Moreover, we are satisfied from our review of the certifications that there is no dispute concerning any factual allegations material to a disposition of appellants' remaining claims. Therefore, this appeal is ripe for a final decision without the need for a remand.

II
Respondents renew their argument that this appeal should be dismissed as moot because the Division has now rendered decisions in the rate appeals that appellants sought to compel the Division to decide. Appellants respond that we have already rejected this argument by denying respondents' motion to dismiss the appeal.
Because our order denying respondents' motion to dismiss was interlocutory, it is subject to reconsideration. See State v. Reldan, 100 N.J. 187, 205, 495 A.2d 76 (1985); Johnson v. Cyklop Strapping Corp., 220 N.J.Super. 250, 257-64, 531 A.2d 1078 (App.Div.1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988). However, we remain satisfied that this appeal is not moot.
Although the Division's failure to issue timely decisions in appellants' then pending Medicaid rate appeals precipitated this action, appellants sought not only an order compelling the Division to decide the pending appeals within thirty days, but also a directive that the Division decide any future Medicaid rate appeal within 120 days. In addition, after the Division decided the pending rate appeals, appellants asserted a claim that those decisions were "incomplete" and sought an order directing the Division to issue "complete" decisions. Appellants also seek an award of attorney's fees. These claims were not mooted by the issuance of decisions in the rate appeals that were pending when the action was initiated, cf. Galloway Township Bd. *1082 of Educ. v. Galloway Educ. Ass'n, 78 N.J. 25, 37-47, 393 A.2d 218 (1978), and must now be addressed.

III
Appellants argue that the Division's failure to issue timely decisions in their Medicaid rate appeals violated the statutes and regulatory provisions governing the Medicaid program, the Due Process Clause of the Fourteenth Amendment and the State law requirement of fundamental fairness in the administrative process. To prevent such delay in future Medicaid rate appeals, appellants seek an order directing the Division to decide future Medicaid rate appeals within 120 days.
Preliminarily, it is appropriate to describe briefly the regulatory framework under which Medicaid rate appeals are brought before the Division. The Medicaid program is a joint federal-state program established by Title XIX of the Social Security Act to provide medical care for indigent, disabled and elderly persons. 42 U.S.C.A. § 1396. Although states are not required to participate, a state that chooses to participate must operate its program in compliance with the federal statute and regulations. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784, 794 (1980).
The Division is the state agency responsible for administering the New Jersey Medicaid program. N.J.S.A. 30:4D-4, 5. Under the present regulatory system, the Division issues an individual rate schedule at least once a year to each hospital participating in the Medicaid program. N.J.A.C. 10:52-5.1 to 5.17. If a hospital disputes its rate schedule, it may file an appeal with the Division. N.J.A.C. 10:52-9.1. Such an appeal may involve a claim either that the Division has made calculation errors or that the rates do not provide adequate compensation for the hospital's costs in caring for Medicaid recipients. N.J.A.C. 10:52-9.1(a),(b).
Appellants' rate appeals all involved claims that the Medicaid reimbursement rates established by the Division did not provide the hospitals with adequate compensation for the care of Medicaid recipients. Such an appeal must be filed within twenty days after publication of the rates, and the documentation supporting the appeal must be filed within an additional sixty-day period. N.J.A.C. 10:52-9.1(b)(1). After the Division reviews the hospital's submission, it must issue a written decision regarding the hospital's rate appeal. If a hospital disagrees with the Division's decision, it may request a hearing before an Administrative Law Judge, whose initial decision is then adopted, modified or rejected by the Director of the Division. N.J.A.C. 10:52-9.1(d).
In January 1996, October 1996, January 1997 and January 1998, the Division issued rate schedules to all New Jersey hospitals then participating in the Medicaid program. On each occasion, appellants filed administrative appeals alleging that their reimbursement rates were inadequate. When appellants filed this action in February 1999, the Division had not decided any of appellants' rate appeals, even though some of them had been pending for a full three years.
It is firmly established in this State that administrative agencies' procedures are subject to judicial review and supervision to assure fairness in the administrative process. See, e.g., In re Arndt, 67 N.J. 432, 436, 341 A.2d 596 (1975); In re Senior Appeals Examiners, 60 N.J. 356, 363, 290 A.2d 129 (1972). As Justice Jacobs observed in Monks v. New Jersey State Parole Bd., 58 N.J. 238, 248-49, 277 A.2d 193 (1971):
Our Judicial system has historically been vested with the comprehensive prerogative writ jurisdiction which it inherited from the King's Bench; that jurisdiction has been frequently exercised in the supervision of inferior governmental tribunals including administrative agencies.... When our 1947 Constitution *1083 was prepared, pains were taken to insure not only that the court's prerogative writ jurisdiction would remain intact, but also that the manner of its exercise would be greatly simplified ( [N.J. Const.] art. VI, sec. 5, ¶¶¶ 4). The implementing court rules now provide an easy mode of review designed to insure procedural fairness in the administrative process and to curb administrative abuses.
Furthermore, our courts have held that undue delay in the administrative process may result in a denial of "fundamental procedural fairness." Arndt, supra, 67 N.J. at 436, 341 A.2d 596; see also Johnson v. New Jersey State Parole Bd., supra, 131 N.J.Super. at 517-21, 330 A.2d 616.
In Arndt, the Court observed that a delay of nearly three years between a motorist's arrest on suspicion of driving while under the influence of alcohol and the Division of Motor Vehicle's final decision suspending his license for refusing to submit to a breathalyzer test "evince[d] an entire lack of that acute appreciation of justice which should characterize a tribunal charged with [such a] delicate and important duty." 67 N.J. at 437, 341 A.2d 596 (quoting Smith v. Illinois Bell Tel. Co., 270 U.S. 587, 591, 46 S.Ct. 408, 409, 70 L.Ed. 747, 749 (1926)). The Court concluded that because the suspension proceedings had not been conducted "within a reasonable time and ... the proceedings as a whole were conducted with seriously unfair disregard of [the motorist's] rights,... the order of suspension should be vacated." Ibid.
The Division's delay in issuing decisions regarding appellant's Medicaid rate appeals was as clearly unjustifiable as the administrative delay that the Court found to violate "fundamental procedural fairness" in Arndt. Id. at 436, 341 A.2d 596. Appellant hospitals are quasi-public entities that are entitled to a timely determination of any claim that they are not being adequately compensated for the care of Medicaid recipients.
The Division's only explanation for its long delay in deciding appellants' rate appeals was presented through the certification of its "Administrator of Provider Rate Setting," which states in pertinent part:
14. The typical packet received from a hospital requesting a rate appeal contains documentation between 3 inches and 12 inches thick.... Each of these packets must be individually reviewed and considered.
15. The first step in the review process is to determine whether the hospital has submitted documentation in support of each of the three categories. If the hospital has not submitted the required information, the rate appeal is denied.
16. If the hospital has submitted documentation in support of each category, the documents are examined closely and the proposed calculations are considered. In addition, based upon the documentation submitted, in some instances [the Division] creates its own new calculations and/or requests additional information from the hospital.
17. There are only 2 people, including myself, within my department capable of performing this intensive review and this is not our only job function.
....
22. A strict 120 day deadline is not feasible given the amount of documentation submitted, that all hospitals submit their documentation on approximately the same day, the intensive examination of those documents and the complex calculations involved in determining rate appeals, and the need, in some cases, for obtaining further documentation from the hospital.
If the Division had received an unexpectedly large number of rate appeals in a particular year, which created a backlog that prevented every appeal from being decided in a timely manner, the Division's explanation might provide a reasonable excuse for some delay in the administrative *1084 process. However, the record indicates that the Division has received approximately the same number of appeals each time it has established new rates,[3] and that it did not decide any hospital rate appeals between February 16, 1996 and July 9,1999. Furthermore, when the Division finally did take action, apparently under the pressure of this litigation, it issued decisions on the same day in all seventy-four of the pending rate appeals that had been filed by hospitals between January 26, 1996 and January 26, 1998. The simultaneous issuance of so many decisions indicates that the Division has the capacity to decide a substantial number of rate appeals within a short period of time. Moreover, two of the Division's decisions simply dismissed appeals that hospitals had filed three years earlier on the ground that the appeals were untimely, even though such a determination could have been made in just a few minutes, without undertaking the "intensive examination of documents" or "complex calculations" that the Division claims are required to decide a Medicaid rate appeal. Therefore, the Division's failure to decide even those rate appeals that it eventually concluded had been filed out-of-time provides added support for our conclusion that the agency violated its statutory responsibilities.
Nevertheless, we find no basis for requiring the Division to decide Medicaid rate appeals within 120 days or any other fixed time period. When the Legislature has concluded that an agency should be required to take action within a fixed time period, it has incorporated a specific provision in the applicable legislation establishing a deadline for agency action. See, e.g., N.J.S.A. 52:14B-10(c) (Administrative Procedure Act); N.J.S.A. 40:55D-73 (Municipal Land Use Law). The Medicaid Act does not contain a comparable provision. Although the federal regulations that govern the Medicaid program require "prompt administrative review" of a rate appeal, 42 C.F.R. § 447.253(e), neither the federal Medicaid statute nor the implementing regulations require a state Medicaid agency to issue a decision within a fixed period of time. In the absence of any federal mandate or state legislative directive that the Division issue its decision in a rate appeal within a specific time, we do not believe it would be appropriate to impose such a requirement by judicial fiat. Instead, we limit the relief in this case to a declaration that the Division has an obligation to decide Medicaid rate appeals within a reasonable period of time.
The Division suggested at oral argument that, except in extraordinary circumstances, it should be able to decide a Medicaid rate appeal within six months after a hospital submits the documentation supporting its appeal. We assume the Division will undertake to decide future Medicaid rate appeals within this time period, and that if any individual appeal cannot be decided within six months, the Division will notify the hospital of the reason for the delay and the additional time it anticipates will be required to complete its review and issue a decision. If the Division fails to issue a decision within a reasonable period of time, a hospital may seek appropriate relief from this court under the procedures described in section I of this opinion.

IV
Appellants also seek a declaration that the Division's decisions in the rate appeals issued on July 9, 1999 are "incomplete" and a direction to the agency to issue "complete" decisions.
N.J.A.C. 10:52-9.1(b)(2) provides that:
The Division will not approve an increase in a hospital's rates unless the hospital demonstrates that it would sustain a marginal loss in providing inpatient services to Medicaid recipients at *1085 the rates under appeal even if it were an economically and efficiently operated hospital.... Any hospital seeking a rate increase must demonstrate the cost it must incur in providing services to Medicaid beneficiaries and the extent to which it has taken all reasonable steps to contain or reduce the costs of providing inpatient hospital services.
In denying appellants' rate appeals, except for the two that were dismissed as untimely, the Division stated:
Because [the Division] determined that your hospital did not sustain a marginal loss for the rate period under appeal, it did not address the issues of whether the hospital was efficiently or economically operated or whether it had taken reasonable steps to reduce or contain its costs.
Appellants contend that by the terms of N.J.A.C. 10:52-9.1(b)(2), the Division must make four separate determinations in deciding a rate appeal:
(1) the Division must first determine whether the hospital is efficiently operated; if not,
(2) the Division must adjust for efficiency in determining whether the hospital would suffer a marginal loss;
(3) the Division must determine if the hospital has demonstrated the cost it must incur in providing services to Medicaid beneficiaries; and
(4) the Division must determine if the hospital has taken all reasonable steps to contain or reduce that cost of providing inpatient services.
Appellants contend that because the Division only decided that they did not suffer marginal losses for the rate periods in question, the Division created the potential for "piecemeal decisionmaking," which could result in additional delay.
However, there is no statute or administrative regulation that requires the Division to consider every issue that may be pertinent to a rate appeal even if it concludes that a hospital's failure to satisfy one requirement of the regulation is dispositive of the appeal. Moreover, it is not uncommon for an administrative agency or a court to pass upon only those issues that need to be addressed in order to reach a final decision in a matter. For example, a court may grant summary judgment dismissing a complaint based upon a single affirmative defense, without considering other possible grounds for dismissal. Although this form of disposition may result in additional litigation if an appellate court concludes that the trial court erred in granting summary judgment on that ground, this does not mean that a trial court is required to consider not only the defense that it finds to be dispositive of the case, but also all other possible defenses simply to avoid the possibility of a remand.
The same principle applies to administrative agency adjudication. Although an agency may decide in its discretion to consider all issues presented in an administrative proceeding, in order to assure that a hearing will produce a final decision, it is not required to do so. Consequently, the Division's decision to consider only a single issue, which the Division found to be dispositive of appellants' rate appeals, did not violate any of the statutory or regulatory provisions governing the Medicaid program or constitute an abuse of discretion. Any alleged error in those decisions is not properly before us in this appeal, but should instead be raised within the framework of appellants' pending administrative appeals from those decisions.

V
Finally, we consider appellants' attorney's fee claim. This claim is based on 42 U.S.C.A. § 1988, which provides that "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Section 1983 (42 U.S.C.A. § 1983) provides in relevant part:

*1086 Every person who, under color of any statute, ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
Although our decision rests solely on state grounds, this does not foreclose appellants from seeking an award of attorney's fees under 42 U.S.C.A. § 1988, because a party who prevails solely on state grounds, without the court reaching its federal claims, may be entitled to such fees. See Maher v. Gagne, 448 U.S. 122, 132-33, 100 S.Ct. 2570, 2576-77, 65 L.Ed.2d 653, 663 (1980); Williams v. Hanover Housing Auth., 113 F.3d 1294, 1297-99 (1st Cir.1997); see also Urban League of Greater New Brunswick v. Mayor & Council of Carteret, 115 N.J. 536, 542-46, 559 A.2d 1369 (1989). Attorney's fees are recoverable in a § 1983 action if the plaintiffs prevail on a state law issue arising from the same nucleus of common facts as the federal claims, provided the federal claims are substantial enough to support federal jurisdiction. Maher v. Gagne, supra, 448 U.S. at 133 n. 15, 100 S.Ct. at 2576, 65 L.Ed.2d at 663; see Williams v. Hanover Housing Auth., supra, 113 F.3d at 1298. A federal claim is considered insubstantial only if it is obviously without merit or its unsoundness "so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." Hagans v. Lavine, 415 U.S. 528, 537-38, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577, 587-88 (1974).
Appellants asserted two federal claims. First, appellants claimed that the Division's delays in deciding their rate appeals violated the Due Process Clause of the Fourteenth Amendment. In support of this claim, appellants relied solely upon four cases that involved administrative delays in processing claims for governmental benefits: Fusari v. Steinberg, 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975) (unemployment compensation); Perez v. Lavine, 378 F.Supp. 1390 (S.D.N.Y.1974) (welfare); Nelson v. Sugarman, 361 F.Supp. 1132 (S.D.N.Y.1972) (same); Viglietta v. Blum, 108 Misc.2d 516, 437 N.Y.S.2d 625 (N.Y.Sup.Ct.1981) (medical assistance). However, this case does not involve an individual's claim for governmental benefits but rather a determination of the reimbursement rates to be paid to providers of government funded services. In determining whether a party has presented a viable procedural due process claim, two fundamental considerations are the nature of the private interest involved and the risk that the challenged administrative practice will result in a deprivation of that interest. See Mathews v. Eldridge, 424 U.S. 319, 339-43, 96 S.Ct. 893, 905-07, 47 L.Ed.2d 18, 36-38 (1976). A Medicaid provider's interest in a prompt determination of a dispute over the level of its reimbursement rates is not at all comparable to an individual's need for a speedy determination of his or her entitlement to welfare benefits or other government assistance necessary to provide food, shelter and other essentials of life, such as was involved in the cases upon which appellants rely. Compare Goldberg v. Kelly, 397 U.S. 254, 260-66, 90 S.Ct. 1011, 1016-20, 25 L.Ed.2d 287, 295-98 (1970) with Ritter v. Cohen, 797 F.2d 119, 124 (3d Cir.1986), and Cassim v. Bowen, 824 F.2d 791, 797-98 (9th Cir.1987).
Furthermore, appellants had a readily available remedy to prevent undue delay in the issuance of decisions in their rate appeals. As discussed in section I of this opinion, appellants could have filed a notice of appeal and motion for summary disposition to compel the Division to decide their appeals. The availability of such an expeditious judicial remedy may negate any claim that a party has been deprived of a constitutionally protected interest as a result of agency inaction. See Anastasio *1087 v. Planning Bd. of Township of West Orange, 209 N.J.Super. 499, 519-22, 507 A.2d 1194 (App.Div.), certif. denied, 107 N.J. 46, 526 A.2d 136 (1986); see also Rivkin v. Dover Township Rent Leveling Bd., 143 N.J. 352, 378-79, 671 A.2d 567, cert. denied, 519 U.S. 911, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996).
In Anastasio, a developer obtained a judgment under 42 U.S.C.A. §§ 1983 and 1988 against members of a planning board on the theory that their delay in reviewing and approving a site plan application violated the Due Process Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment. In reversing, we noted that plaintiff was "free at any time to bring an action in lieu of prerogative writs under state law to challenge the action of the board" and concluded that "as a matter of law plaintiff could suffer no violation of any constitutional right by reason of delay in approval of its site plan." 209 N.J.Super. at 520, 507 A.2d 1194. The Third Circuit reached the same conclusion in rejecting a developer's claim that a municipality's delay in issuing a building permit constituted a denial of procedural due process. Bello v. Walker, 840 F.2d 1124, 1127-28 (3d Cir.), cert. denied, 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988); see also DeBlasio v. Zoning Bd. of Adjustment of West Amwell, 53 F.3d 592, 597 (3d Cir.), cert. denied, 516 U.S. 937, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995) ("[W]hen a state affords a full judicial mechanism with which to challenge the administrative decision in question, the state provides adequate procedural due process, ... whether or not the plaintiff avails himself or herself of the provided appeal mechanism.") (quoting Bello, supra, 840 F.2d at 1128). Similarly, appellants' own deliberate decision not to avail themselves of the readily available judicial remedy for administrative inaction precluded them from asserting a claim under the Due Process Clause.
Appellants' second federal claim was predicated upon a regulation of the Department of Health and Human Services (DHHS), which provides in relevant part:
The Medicaid agency must provide an appeals or exception procedure that allows individual providers an opportunity to submit additional evidence and receive prompt administrative review, with respect to such issues as the agency determines appropriate, of payment rates.
[42 C.F.R. § 447.253(e)(2000).]
This regulation was adopted to implement the so-called "Boren Amendment," under which states were required to establish Medicaid rates that were "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C.A. § 1396a(a)(13)(A). The Balanced Budget Act of 1997, Pub.L. No. 105-33, 111 Stat. 251, § 471, repealed the Boren Amendment and replaced the requirement of "reasonable and adequate" rates with a requirement of a "public process for determination of rates of payment." 42 U.S.C.A. § 1396a(a)(13)(A). However, because some of appellants' rate appeals were filed prior to the repeal of the Boren Amendment, it is arguable that this legislation and the regulations adopted thereunder, including 42 C.F.R. § 447.253(e), apply to this case.[4] See Children's Hosp. & Health Ctr. v. Belshe, 188 F.3d 1090, 1095 (9th Cir.1999).
There is a conflict among the federal circuit courts of appeals as to whether an administrative regulation constitutes a "law" within the intent of 42 U.S.C.A. § 1983. Compare Harris v. James, 127 F.3d 993, 1005-09 (11th Cir.1997), with Boatman v. Hammons, 164 F.3d 286, 289 (6th Cir.1998). If an administrative regulation by itself cannot provide the foundation for a § 1983 claim, appellants' claim *1088 that the Division violated 42 C.F.R. § 447.253(e) would not be maintainable under 42 U.S.C.A. §§ 1983 and 1988. However, we do not need to decide this issue, because we conclude that 42 C.F.R. § 447.253(e) did not create a privately enforceable right.
It is now firmly established that "to seek redress through § 1983, ... a plaintiff must assert the violation of a federal right, not merely a violation of a federal law." Blessing v. Freestone, 520 U.S. 329, 340, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569, 582 (1997). Three factors determine whether a statutory provision creates an individual federal right:
First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.
[Id. at 340-41, 117 S.Ct. at 1359, 137 L.Ed.2d at 582.]
In determining whether a statutory provision satisfies these criteria, a court should not consider a statute "as an undifferentiated whole," but should instead determine whether the specific provision relied upon by the plaintiff creates privately enforceable rights. Id. at 342, 117 S.Ct. at 1360, 137 L.Ed.2d at 583. Consequently, even though the Supreme Court concluded that the Boren Amendment's mandate that states establish Medicaid rates that are "adequate to meet the costs that must be incurred by efficiently and economically operated facilities," 42 U.S.C.A. § 1396a(a)(13)(A), created a privately enforceable right, Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), this does not mean that every other obligation imposed under authority of the Boren Amendment also gave rise to privately enforceable rights.
We conclude that 42 C.F.R. § 447.253(e) did not create privately enforceable rights because it was couched in "precatory" rather than "mandatory" terms. Blessing, supra, 520 U.S. at 340, 117 S.Ct. at 1359, 137 L.Ed.2d at 582. The essentially "precatory" nature of the obligation imposed by 42 C.F.R. § 447.253(e) is evidenced by the statement issued by DHHS when it adopted the regulation:
With regard to the comment on establishing time periods, we believe that a greater degree of specificity in the appeals provision would not be in the interests of State flexibility nor would it necessarily result in any substantial benefit to the Medicaid program. We do agree that State appeal procedures should be consistent with the intent of the Federal provision regarding prompt administrative review as currently reflected in the regulation. Therefore, we are not revising the regulations to specify a given time period, for the State to act on appeal requests.
[48 Fed.Reg. 56,046, 56,052 (1983).]
In view of the fact that DHHS made a deliberate policy decision not to require state Medicaid agencies to decide rate appeals within a specific period of time, we do not believe that 42 C.F.R. § 447.253(e) can be reasonably read to "unambiguously impose a binding obligation on the States." Blessing, supra, 520 U.S. at 340, 117 S.Ct. at 1359, 137 L.Ed.2d at 582.
Moreover, even if a plaintiff demonstrates by application of the three factors identified in Blessing that a statutory provision was intended to confer an individual right, this only establishes "a rebuttable presumption that the right is enforceable under § 1983." Blessing, supra, 520 U.S. at 341, 117 S.Ct. at 1360, 137 L.Ed.2d at 582. Congress may foreclose relief under § 1983 either "expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive *1089 enforcement scheme that is incompatible with individual enforcement under § 1983." Ibid. Appellants' claim was grounded solely upon 42 C.F.R. § 447.253(e), not any statutory provision. Consequently, the question is not one of congressional intent but rather whether DHHS intended to confer an individual right when it adopted 42 C.F.R. § 447.253(e). We are satisfied based on the language of this regulation and the previously quoted accompanying statement that DHHS did not intend to authorize an action under 42 U.S.C.A. § 1983 whenever a Medicaid agency failed to issue a timely decision in a rate appeal. See Suter v. Artist M., 503 U.S. 347, 357-64, 112 S.Ct. 1360, 1366-70, 118 L.Ed.2d 1, 12-16 (1992); Harris v. James, supra, 127 F.3d at 1008-10.
In sum, appellants failed to present a substantial question under the Due Process Clause or other federal law, and therefore are not entitled to attorney's fees under 42 U.S.C.A. § 1988.
Accordingly, the Division of Medical Assistance and Health Services is directed to decide future appeals of hospitals' Medicaid reimbursement rates within a reasonable period of time. Appellants' other claims for relief are denied.
NOTES
[1] Appellants' counsel advised the court at oral argument that Deborah's rate appeals have been the subject of settlement discussions, and that Deborah is not pursuing any claim regarding the Division's failure to decide those appeals during the period following July 9, 1999.
[2] There is some authority for the view that the Law Division has jurisdiction to entertain an action to compel a state agency to perform a ministerial duty. See Pfleger v. State Highway Dep't, 104 N.J.Super. 289, 250 A.2d 16 (App. Div.1968); Colon v. Tedesco, 125 N.J.Super. 446, 311 A.2d 393 (Law Div.1973). However, the Division's determinations concerning the allocation of staff and other resources to review and issue decisions in Medicaid rate appeals clearly involves a discretionary rather than a ministerial duty.
[3] The Division indicates that it received seventeen appeals of the January 1996 rates, twenty appeals of the October 1996 rates, seventeen appeals of the January 1997 rates and twenty appeals of the January 1998 rates.
[4] In view of the repeal of the Boren Amendment, DHHS announced the proposed repeal of 42 C.F.R. § 447.253(e) on October 6, 1999. 64 Fed.Reg. §§ 54,263, 54,266 (1999).